1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## DISTRICT OF ARIZONA

8  Patrick Allen Rundhaug,

9              Petitioner,                    CV11-0770-TUC-FRZ (JR)

10  vs.                                       **REPORT AND**
                                              **RECOMMENDATION**
11  Charles L. Ryan, et al.,

12              Respondents.

13

14

15       Pending before the Court is Patrick Allen Rundhaug's Petition for Writ of

16  Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254.  In accordance with the

17  Rules of Practice of the United States District Court for the District of Arizona and

18  28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and

19  recommendation.  As explained below, the Magistrate Judge recommends that the

20  District Court, after an independent review of the record, dismiss the Petition with

21  prejudice.

22

## I.      FACTUAL AND PROCEDURAL BACKGROUND

In September of 1999, Rundhaug was indicted in Pima County Superior Court case number CR-67313 on 17 felony counts of theft, criminal impersonation, forgery, and fraudulent scheme and artifice.  *Answer*, Ex. A, p. 1.  He pled guilty to fraudulent scheme and artifice and theft, class 2 and class 5 felonies respectively, and on June 14, 2000, the trial court sentenced him to a 7-year term of probation and ordered him to pay $30,143.00 in restitution.  *Answer*, Exs. C (Indictment); D (Plea Agreement); E (Change of Plea); and F (Sentencing Minute Entry).   Pursuant to the plea agreement and A.R.S. § 13-4033(B), Rundhaug waived his right to direct appeal.

In 2000, in Pima County Superior Court cases CR-20003468, CR-20003501 and CR-20003502, Rundhaug was charged with various counts including attempted fraudulent scheme and artifice, forgery, "super" fraudulent scheme and artifice, and taking the identity of another.  *Id*., Ex. G, p. 1.  Pursuant to a plea agreement, he pled guilty to "super" fraudulent scheme and artifice and the trial court sentenced him to a partially aggravated prison term of six years.  *Id*. pp. 1-2.  The trial court also ordered that the probation term imposed in CR-67313 be tolled while Rundhaug served the six year prison term imposed in CR-20003468, 20003501, and 20003502.  *Id.*, p. 3.  However, on review, the Arizona Court of Appeals found that the trial court did not have jurisdiction to toll the sentence of probation and vacated the order.  *Id*.

On October 12, 2004, Rundhaug filed a direct appeal opening brief in CR-67313 with the Arizona Court of Appeals, arguing that his term of probation should be modified.  *Id*., Ex. H.  The State moved to dismiss the appeal based on A.R.S. §

13-4033(B), and on December 9, 2004, the Arizona Court of Appeals dismissed the appeal for lack of jurisdiction.  *Id.*, Exs. I (Motion to Dismiss) and J (dismissal order).

On June 1, 2007, the State filed a Petition to Revoke the term of probation imposed in CR-67313.  *Id.*, Ex. K.  After Rundhaug admitted several of the allegations in the Petition to Revoke, the trial court revoked his probation.  *Id.*, Ex. L. On November 26, 2007, the court sentenced Rundhaug to consecutive terms of imprisonment of 10 years for fraudulent scheme and artifice and 2 years for theft. *Id.*, Ex. M (Commitment Order); Ex. N (transcript).

On December 24, 2007, Rundhaug initiated a state post-conviction relief (PCR) proceeding by filing a Notice of Post-Conviction Relief.  *Id.*, Ex. O. Petitioner then filed a PCR petition in which he alleged that (1) his period of probation had expired prior to the filing of the Petition to Revoke, (2) the trial court improperly aggravated his sentence, and (3) the trial court erred by failing to grant Rundhaug's request for a mental competency screening.  *Id.*, Ex. P.  The trial court, noting that the appellate court had vacated the order tolling his period of probation, granted partial relief on Rundhaug's first claim and vacated the two year sentence on the theft count, and rejected the remaining claims.  *Id.*, Ex. Q.

Rundhaug filed a petition for review raising two issues: (1) whether his probation period had ended prior to the filing of the Petition to Revoke, and (2) whether the trial court properly aggravated his sentence.  *Id.*, Ex. R.  The Court of Appeals granted review, but denied relief.  *Id.*, Ex. A.  The court also denied

1     Rundhaug's motion for reconsideration on September 29, 2009.  *Id.*, Ex. S.  No

2     petition for review by the Arizona Supreme Court was filed and the Court of

3     Appeals' Mandate issued on October 26, 2009.  *Id.*, Ex. T.

4          On December 7, 2009, Rundhaug initiated a second state PCR proceeding.

5     *Id.*, Ex. U.  On May 24, 2010, Rundhaug filed a memorandum in support of the PCR

6     petition alleging 24 claims of ineffective assistance of trial, probation revocation, and

7     post-conviction relief counsel, as well as various claims of trial court error in

8     sentencing and associated rulings from before and after the probation violation

9     finding.  *Id.*, Ex. V.  In a ruling dated November 24, 2010, the trial court denied the

10     bulk of Rundhaug's PCR claims as procedurally precluded and denied the remainder

11     on the merits.  *Id.*, Ex. W.  Rundhaug then sought review of his post-conviction

12     petition in the Arizona Court of Appeals, and by Memorandum Decision filed April

13     20, 2011, the Court of Appeals granted review but denied relief.  *Id.*, Exs. X

14     (petition) and B (order).  Rundhaug did not seek Arizona Supreme court review.  *Id.*,

15     Ex. Y (mandate).

16          On November 30, 2011, Rundhaug filed the instant petition raising 24 grounds

17     for relief.

18     **II.**    **LEGAL DISCUSSION**

19         **A. Timeliness**

20             **1.**    **The Petition includes untimely claims.**

21         The Respondents contend that many of the claims included in Rundhaug's

22     petition are untimely.  The Anti-terrorism and Effective Death Penalty Act of 1996

("AEDPA") provides for a one year statute of limitations to file a petition for writ of habeas corpus.   28 U.S.C. § 2244(d)(1).   Petitions filed beyond the one-year limitations period must be dismissed.  *Id.* The statute provides in pertinent part that:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Respondents argue that two groups of Rundhaug's claims are barred by the AEDPA statute of limitations.   The first group is comprised of the Grounds One, Nine, Fourteen and part of Twenty-Four, all of which, Respondents contend, relate to Rundhaug's 2000 guilty plea and sentencing in CR-67313.   Rundhaug was obligated to raise any claim related to that conviction in a Rule 32 of-right proceeding within

90 days after the entry of judgment and sentence.  Ariz.R.Crim.P. 32.4(a).  Applied to Rundhaug, this meant that he was required to initiate a Rule 32 petition of-right proceeding 90 days after his June 14, 2000 sentencing, which was September 12, 2000.  Rundhaug, however, did not initiate a state PCR proceeding by that date.  As Respondents point out, he did not initiate a PCR proceeding at all until after his probation was revoked in 2007.  Thus, his judgment and sentence became final on September 12, 2000, and under AEDPA's one year statute of limitations he was required to file his habeas petition by September 12, 2001, at least as to the claims arising from his guilty plea conviction and his original sentence of probation and restitution.  As discussed below, under these requirements, Grounds One, Fourteen and a portion of Ground Twenty-four, all of which are based on his June 2000 conviction and sentence, are barred under 28 U.S.C. § 2244(d)(1)(A).  Ground Nine, however, is timely.

In Ground One, Rundhaug contends that his original, seven year sentence for theft was illegal and that counsel was ineffective for permitting him to agree to probation.  All the facts associated with this claim were known to Rundhaug on June 14, 2000, the date he was sentenced.  Thus, this claim was not raised within one year of his conviction becoming final and, absent tolling, is barred from review.

In Ground Nine, Rundhaug contends that the imposition of jail time after he had completed 6 years and 353 days of probation constituted double jeopardy and cruel and unusual punishment.  As this claim did not ripen until Rundhaug was

1    sentenced on the probation violation on November 26, 2007, it is not barred due to

2    his failure to raise it after he was initially sentenced in CR-67313.

3        In Ground Fourteen, Rundhaug claims that the trial court, before sentencing

4    him in CR-67313, improperly met *ex parte* with a member of the Attorney General's

5    office regarding Rundhaug's restitution.  And in Ground Twenty-four, a portion of

6    the claim alleges that his trial counsel in CR-67313 was ineffective.  Rundhaug either

7    was or with diligence should have been aware of these circumstances at or before the

8    time he was sentenced in CR-67313 and these claims are therefore untimely.  *Hasan*

9    *v. Galaza*, 254 F.3d 1150, 1154 n. 3 (9th Cir. 2001) (statute of limitations begins to

10   run when a petitioner "knows (or through diligence could discover) the important

11   facts, not when [he] recognizes their legal significance")

12       Respondents also assert that Grounds Five, Six, Seven, Thirteen, Fifteen,

13   Seventeen and Twenty-Three are barred under 28 U.S.C. § 2244(d)(1)(D).  This

14   group of claims is based on various factual predicates that allegedly arose after

15   September 12, 2000, when the time for appeal expired in CR-67313.  Rundhaug was

16   required to raise the claims within one-year of "the date on which the factual

17   predicate of the claim or claims presented could have been discovered through the

18   exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D); *Hasan*, 254 F.3d at 1154 n. 3;

19   *Redd v. McGrath*, 343 F.3d 1077, 1084 (9th Cir. 2003).  Given that each claim might

20   have a different commencement date, the court must evaluate the limitations period

21   on a claim-by-claim basis.  *Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2012).

22

1    Rundhaug filed the instant petition on November 30, 2011. When the time

2    periods during which his two PCR proceedings were pending (December 24, 2007 to

3    September 29, 2009 (646 days), and December 7, 2009 to April 20, 2011 (500 days))

4    are added to the one-year AEDPA limitations period, any claim for which the factual

5    predicate arose, or was discoverable through the exercise of due diligence, prior to

6    October 22, 2007, is time-barred under section 2244(d)(1)(D).

7    In Ground Five, Rundhaug claims that the trial court and the probation

8    services department failed to correctly apply various probation guidelines after his

9    release from prison in December 2005. The factual basis for this claim is that

10   Rundhaug was treated like a new probationer and was not given the freedoms of a

11   longer-time probationer. Thus, the facts underlying this claim were known to

12   Rundhaug for nearly two years prior to October 22, 2007, and the claim is therefore

13   time-barred under section 2244(d)(1)(D).

14   In Ground Six, Rundhaug asserts that his original seven-year probation term

15   had already expired when the State filed its petition to revoke his probation in June

16   2007. As he was not sentenced on the probation violation until November 26, 2007,

17   it is arguable that this claim was not ripe until then. Thus, the date of sentencing, and

18   not the date the petition to revoke was filed, would trigger the limitations period.

19   *See, e.g., Mattern v. Secretary for Dept. of Corrections*, 494 F.3d 1282, 1286 (11th

20   Cir. 2007) ("[I]f the factual predicate for the claims was not known until some later

21   date, such as the date on which he was sentenced for the probation revocation, the

22

8

1   later date would be the trigger for the limitations period.").  Thus, this claim is not

2   barred by section 2244(d)(1)(D).

3       In Ground Seven, Rundhaug asserts that the Superior Court failed to "rectify

4   its 2001 tolling of probation as mandated in the Memorandum Decision of the Court

5   of Appeals in 2-CA-CR 2002-0068 as it was ordered to do . . . ."  The Memorandum

6   Decision at issue, which was filed on May 20, 2003 (*Answer*, Ex. G), found that the

7   trial court in sentencing Rundhaug in CR-20003468, 20003501 and 20003502, was

8   without jurisdiction to toll his period of probation imposed in CR-67313.  *Id.*, Ex. G,

9   p. 2.  Despite this ruling, in the Petition to Revoke Probation filed in case number

10  CR-67313 on June 1, 2007, the State alleged that the probation period was tolled

11  while Rundhaug was in prison.  Thus, at least by June 1, 2007, Rundhaug was, or

12  with any diligence would have been, aware that the allegations in the Petition to

13  Revoke were inconsistent with the Court of Appeals Memorandum Decision.  This

14  being before the October 22, 2007 cut-off date for timeliness, this claim is barred.

15      Ground Thirteen alleges that the Department of Corrections improperly

16  garnished his savings to pay restitution while he was incarcerated.  It is not clear

17  from the Petition whether the facts underlying this claim arose when Rundhaug was

18  serving his sentence imposed in relation to case numbers CR-20003468, 20003501

19  and 20003502, or if they arose when he was incarcerated after the revocation of his

20  probation in CR-67313.  In either case, however, habeas relief is unavailable for this

21  claim.  A challenge to the payment of restitution is not cognizable under section 2254

22  because it does not affect the fact or duration of Rundhaug's custody.  *See Calderon*

1  *v. Ashmus*, 523 U.S. 740, 747 (1998) (limiting § 2254 habeas challenges to the fact or

2  duration of custody); *United States v. Thiele*, 314 F.3d 399, 400 (9th Cir. 2002)

3  (challenge to restitution not cognizable on habeas).

4      In Ground Fifteen, Rundhaug claims that his constitutional rights were

5  violated by the trial court in case number CR-67313 because it failed to fully rule on

6  his March 2006 motion to modify his restitution.  The facts underlying this claim

7  were likely known to Rundhaug earlier in 2006, but became certain on July 20, 2007,

8  when the trial court admitted some of the allegations in the Petition to Revoke and

9  found Rundhaug in violation of probation.  *Answer*, Ex. L.  Again, this date being

10  before the October 22, 2007 cut-off date for timeliness, this claim is barred.

11      In Ground Seventeen, Rundhaug claims that procedural error resulted from the

12  State's failure to include the Arizona Court of Appeals' decision in 2-CA-CR 2002-

13  0068 PR, which was decided on May 20, 2003, in the file of case number CR-67313.

14  This alleged error was known, or with diligence should have been known, to have

15  occurred at least by June 2007 when the State petitioned to revoke Rundhaug's

16  probation.  Thus, this claim is not timely.

17      Ground Twenty-Three alleges that Rundhaug's probation officer was derelict

18  in relation to his probation revocation.  The facts underlying these claims were

19  certainly known to Rundhaug at least by June 1, 2007 when the State filed the

20  petition to revoke his probation in CR-67313.  Accordingly, this claim also arose

21  before October 22, 2007 and is untimely.

22

1               **2.**        **Rundhaug is not entitled to equitable tolling.**

2        The United States Supreme Court has determined that "§ 2244(d) is subject to

3 equitable tolling in appropriate cases." *Holland v. Florida*, 130 S.Ct. 2549, 2560

4 (2010). However, it is available only when "extraordinary circumstances beyond a

5 prisoner's control make it impossible to file a petition on time" and "the

6 extraordinary circumstances were the cause of his untimeliness." *Laws v. Lamarque*,

7 351 F.3d 919, 922 (9th Cir. 2003). "Indeed, 'the threshold necessary to trigger

8 equitable tolling is very high, lest the exceptions swallow the rule." *Miranda v.*

9 *Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212

10 F.3d 1005, 1010 (7th Cir. 2000)). Here, the circumstances do not trigger equitable

11 tolling.

12        In his Traverse, Rundhaug goes to great lengths in his attempts to justify

13 equitable tolling. However, once the extraneous material is stripped from his

14 justifications, Rundhaug's argument boils down to two central assertions. The first is

15 that, by failing to rule on his March 16, 2007 motion to terminate his probation, the

16 trial court gave him no ruling which he could then appeal. His second argument is

17 that the time for seeking post-conviction relief was re-started when he was sentenced

18 on November 26, 2007 after his probation was revoked. Neither of these arguments

19 supports tolling on his untimely claims.

20        Rundhaug's first argument is meritless. At length he explains that the trial

21 court, by ignoring his March 2007 motion to terminate his probation, left him without

22 an appealable order. Certainly, any confusion about the trial court's intentions were

1   cleared up when it found him in violation of his probation on July 20, 2007. *Answer*,

2   Ex. L.  Thus, the trial court's alleged failure to act on his motion to terminate his

3   probation did nothing to prevent him from timely raising his claims.

4         Rundhaug's second argument is that his November 26, 2007 sentencing after

5   his probation revocation in CR-67313 served to revive many of his claims.  Although

6   one of his claims, that alleged in Ground Six, was found to be triggered on the

7   November 26, 2007 sentencing date, that sentencing had no effect on claims about

8   which the factual predicate was previously known.  As discussed above, "if the

9   factual predicate for the claims was not known until some later date, such as the date

10  on which he was sentenced for the probation revocation, the later date would be the

11  trigger for the limitations period."  *See, e.g., Mattern v. Secretary for Dept. of*

12  *Corrections*, 494 F.3d 1282, 1286 (11th Cir. 2007).  For example, Ground Six of the

13  petition raises the claim that Rundhaug's original seven-year probation term had

14  already expired when the State filed its petition to revoke his probation in June 2007.

15  As he was not sentenced on the probation violation until November 26, 2007, that is

16  the date upon which the factual predicate to this claim was indisputably known by

17  Rundhaug.   However, as discussed above, each of Rundhaug's other claims had its

18  own commencement date and required evaluation of timeliness on a claim-by-claim

19  basis.  *See Mardesich*, 668 F.3d at 1171.  There is no legal or factual basis for

20  allowing Rundhaug's November 26, 2007 sentencing date to affect the evaluation of

21  those claims.  As such, the Court finds no basis for equitable tolling.

22

12

**B.      Exhaustion and Procedural Default**

Respondents also contend that nineteen of Rundhaug's claims were not properly exhausted and are barred from habeas review.  A state prisoner must exhaust the available state remedies before a federal court may consider the merits of his habeas corpus petition.  *See* 28 U.S.C. § 2254(b)(1)(A); *Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir.1999).  "[A] petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

Exhaustion requires that a habeas petitioner present the substance of his claims to the state courts in order to give them a "fair opportunity to act" upon these claims.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999).  "To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32," *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then present his claims to the Arizona Court of Appeals.  *See Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir. 1999).

Additionally, a state prison must not only present the claims to the proper court, but must also present them fairly.  A claim has been "fairly presented" if the petitioner has described the operative facts and federal legal theories on which the claim is based.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v. Wood*, 44

13

F.3d 1396, 1403 (9th Cir. 1995).  "Our rule is that a state prisoner has not 'fairly presented' (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law."  *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), amended on other grounds, 247 F.3d 904 (9th Cir. 2001).  A petitioner must alert the state court to the specific federal constitutional guaranty upon which his claims are based, *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001), however, general appeals in state court to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish fair presentation of a federal constitutional claim. *Lyons*, 232 F.3d at 669.  Moreover, it is not enough that a petitioner presented to the state court all the facts necessary to support an inadequately identified federal claim or that a "somewhat similar" state law claim was raised.  *Baldwin v. Reese*, 541 U.S. 27, 28 (2004); *Shumway v. Payne*, 223 F.3d 982, 988 (9th Cir. 2000) (mere similarity between a claim of state and federal error insufficient to establish exhaustion). "Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory."  *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2005).

Claims may be procedurally defaulted and barred from federal habeas review in a variety of circumstances.  If a state court expressly applied an adequate and independent state procedural bar when the petitioner attempted to raise the claim in state court review of the merits of the claim by a federal habeas court is barred.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).  Arizona courts have been consistent

1   in the application of the state's procedural default rules.  *Stewart v. Smith*, 536 U.S.

2   856, 860 (2002) (holding that Ariz.R.Cirm.P. 32.2(a) is an adequate and independent

3   procedural bar).  In Arizona, claims not previously presented to the state courts on

4   either direct appeal or collateral review are generally barred from federal review

5   because any attempt to return to state court to present them would be futile unless the

6   claims fit into a narrow range of exceptions.  *See Ariz.R.Crim.P.* 32.1(d)-(h), 32.2(a)

7   (precluding claims not raised on direct appeal or in prior post-conviction relief

8   petitions), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty

9   days of trial court's decision).   Because these rules have been found to be

10  consistently and regularly followed, and because they are independent of federal law,

11  either their specific application to a claim by an Arizona court, or their operation to

12  preclude  a return to state court to exhaust a claim, will procedurally bar subsequent

13  review of the merits of such a claim by a federal habeas court.  *Stewart*, 536 U.S. at

14  860; *Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th Cir. 1998) (Rule 32, Ariz.R.Crim.P.

15  is strictly followed); *State v. Mata*, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and

16  preclusion rules strictly applied in postconviction proceedings).

17       A federal court may not consider the merits of a procedurally defaulted claim

18  unless the petitioner can demonstrate cause for his noncompliance and actual

19  prejudice, or establish that a miscarriage of justice would result from the lack of

20  review.  *See Schlup v. Delo*, 513 U.S. 298, 321 (1995).  To establish cause, a

21  petitioner must point to some objective factor external to the defense impeded his

22  efforts to comply with the state's procedural rules.  *Dretke v. Haley*, 541 U.S. 386,

1   393-94 (2004).  "[C]ause is an external impediment such as government interference

2   or reasonable unavailability of a claims factual basis." *Robinson v. Ignacio*, 360 F.3d

3   1044, 1052 (9th Cir. 2004) (citations omitted).  Ignorance of the state's procedural

4   rules or lack of legal training do not constitute legally cognizable "cause" for a

5   petitioner's failure to fairly present a claim.  *Hughes v. Idaho State Board of*

6   *Corrections*, 800 F.2d 905, 908-10 (9th Cir. 1986); *Schneider v. McDaniel*, 674 F.3d

7   1144, 1153 (9th Cir. 2012).   "Prejudice" is actual harm resulting from the

8   constitutional violation or error.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir.

9   1984); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996).

10       Alternatively, a federal court may review the merits of a procedurally

11   defaulted claim where a petitioner can establish that a "fundamental miscarriage of

12   justice" would otherwise result.  *Schlup v. Delo*, 513 U.S. at 327.  A fundamental

13   miscarriage of justice exists when a constitutional violation resulted in the conviction

14   of one who is actually innocent.  *Id*.

15                  **1.      Analysis of Claims**

16                       **a.      Ground One**

17       In addition to being untimely, Ground One of the Petition is not exhausted.  In

18   Ground One, Rundhaug contends that his original, seven year sentence for theft was

19   illegal and that counsel was ineffective for permitting him to agree to probation.

20   Respondents assert that the claim was not raised as a federal claim.   Rundhaug

21   contends that this claim was appropriately raised in his two petitions for post-

22   conviction relief.

1   In his first PCR petition, filed August 18, 2008, Rundhaug did not raise the

2   claim that his counsel was ineffective for permitting him to agree to the term of

3   probation.  *Answer*, Ex. P.  The petition does include the portion of Ground One

4   alleging that the sentence was illegal.  *Id*.  However, as reflected in both the petition

5   and in the Court of Appeals' decision denying the claim, the argument was based

6   entirely on state law grounds. *Answer*, Exs. P and A (Memorandum Decision), pp. 2-

7   4.  "Exhaustion demands more than drive-by citation, detached from any articulation

8   of an underlying federal legal theory."  *Castillo v. McFadden*, 399 F.3d 993, 1003

9   (9th Cir. 2005).  Moreover, "mere similarity between a claim of state and federal error

10  is insufficient to establish exhaustion."  *Shumway*, 223 F.3d at 988 (quotations

11  omitted).  Thus, the ineffective assistance claim was not exhausted in the first PCR

12  petition because it was not raised at all and the "illegal sentence" portion of Ground

13  One was not presented as a federal claim.

14  In Rundhaug's second PCR petition, filed on May 24, 2010, he raised both the

15  claim that his counsel was ineffective in allowing him to agree to a term of probation

16  and the claim that his sentence was illegal.  *Answer*, Ex. V.  Addressing the

17  ineffective assistance claim, the trial court, relying on Ariz.R.Crim.P. 32.2(a)(3),

18  concluded that any claims of ineffective assistance at sentencing were "technically

19  precluded because they should have been raised in his first Rule 32 proceeding."

20  *Answer*, Ex. W, p. 3.  Addressing the illegal sentence claim, the court found that it

21  had been previously addressed on the merits and pursuant to Ariz.R.Crim.P.

22  32.2(a)(2), Rundhaug was  precluded from raising it again.  *Id*., p. 4.  This decision

1    was later adopted by the Court of Appeals.  *Answer*, Ex. B, p. 4.  Thus, Ground One

2    is procedurally defaulted.

3                    **b.    Grounds Two and Three**

4            In Ground Two, Rundhaug alleges that the trial court had improper *ex parte*

5    communications with a biased probation officer and in Ground Three he alleges that

6    the trial court improperly relied on this information, and other "false statements" in

7    his presentencing report, during sentencing.  He did not raise these claims at all in his

8    first PCR petition.  *Answer*, Ex. P.  Rundhaug did raise the claims in his second PCR

9    petition, where he alleged that the court's communication with the biased probation

10   officers was "unlawful and violated the Sixth and Fourteenth amendments to the U.S.

11   Constitution," *Answer*, Ex. V, pp. 8-10, and that the court's reliance on the false

12   information in the presentence report "constituted an abuse of discretion," *id*., p. 10.

13          Rundhaug's only reference to federal law in either of these arguments was the

14   mention of the Sixth and Fourteenth Amendments.  However, "general appeals to

15   broad constitutional principles, such as due process, equal protection, and the right to

16   a fair trial, are insufficient to establish exhaustion."  *Hiivala v. Wood*, 195 F.3d 1098,

17   1106 (9th Cir. 1999) (citing *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)).  Here,

18   other than the passing citation to the United States Constitution, Rundhaug offers no

19   articulation of an underlying federal legal theory or citation to a case, state or federal,

20   that includes such an analysis.  As such, these claims were not fairly presented.

21

22

1

c.     **Ground Four**

2      Ground Four is also related to the trial court's alleged sentencing errors. In

3 this claim, Rundhaug alleges that the trial court did not conduct an adequate

4 investigation of the presentence report and relied on false information contained

5 therein.  In support of this claim, Rundhaug cites no federal authority, but relies on

6 seven Arizona cases for the proposition that if the false statements in the presentence

7 report had been exposed as false, "it could have" or "might have" changed the

8 outcome.

9      In some cases, "for purposes of exhaustion, a citation to a state case analyzing

10 a federal constitutional issue serves the same purpose as a citation to a federal case

11 analyzing such an issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).

12 Of the Arizona cases cited by Rundhaug, which are comprised of the following:

13 *State v. Watton*, 164 Ariz. 323, 325, 793 P.2d 80, 82 (1990) (voluntariness of plea

14 agreement);  *State v. Ketchum*, 191 Ariz. 415, 416, 956 P.2d 1237, 1238 (App.1997)

15 (prosecutor's use of evidence admitted in guilt phase during penalty phase not

16 improper);  *State v. Rosas*, 183 Ariz. 421, 423, 904 P.2d 1245, 1247 (App.1995)

17 (discussing duty to inform defendant of immigration consequences of guilty plea);

18 *State v. D'Ambrosio*, 156 Ariz. 71, 73, 750 P.2d 14, 16 (1988) (defense counsel's

19 alleged intoxication at trial entitled defendant to evidentiary hearing on claim of

20 ineffective assistance of counsel);  *State v. Schrock*, 149 Ariz. 433, 441, 719 P.2d

21 1049, 1057 (1986) (explaining when a hearing is necessary to resolve a claim of

22 ineffective assistance of counsel under state law);  *State v. Johnson*, 181 Ariz. 346,

1   890 P.2d 641 (App. 1995) (sufficiency of factual basis of plea under state law); and

2   *State v. Puls*, 176 Ariz. 273, 860 P.2d 1326 (App. 1993) (evidentiary sufficiency of

3   conviction under state law), only one arguably discusses his claim under federal

4   authorities.

5          In *State v. Watton*, 164 Ariz. 323, 325, 793 P.2d 80, 82 (1990), the Arizona

6   Supreme Court held that "[p]resentence reports must contain complete and accurate

7   information, especially where a presentence hearing does not take place." *Id.* In

8   reaching this conclusion, the Court cited a Harvard Law Review article entitled *Due*

9   *Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of*

10  *Presentence Reports in Federal Courts*, 93 Harv.L.Rev. 1615.  In turn, the cited

11  article includes a thorough analysis, including the citation to federal cases, of the due

12  process concerns implicated by inaccurate presentence reports.  *Id.* at 1637-1640.

13  Giving Rundhaug a great deal of leeway, when this article is considered along with

14  the discussion in *Watton* about the importance of accurate presentence reports, an

15  argument can be made that his claim was fairly presented to the state court.  *See*

16  *Petersen v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (basis of claim can be made

17  explicit by citing state cases that plainly analyze the constitutional claim); *cf. Fields*

18  *v. Waddington*, 401 F.3d 1018, 1022 (9th Cir. 2005) (mere citation to a state case that

19  conducts analysis under state and federal law does not necessarily satisfy exhaustion

20  requirements).  The Court will give Rundhaug the benefit of the doubt and find that

21  he has exhausted this claim.

22

1          **d.     Ground Six**

2          In Ground Six, Rundhaug alleges that his due process rights under the Sixth

3     and Fourteenth Amendments were violated by the trial court when "it re-set

4     Rundhaug's remaining probation at '6 years 32 days' [with an] ending date of May

5     25, 2007 but then revoked his probation for a technical violation filed on June 1,

6     2007."  Rundhaug raised this claim in passing in one petition for post-conviction

7     relief, *Answer*, Ex. P, p. 2, and in a little more depth in a second petition for post-

8     conviction relief, *id*., Ex. V, p. 16-17, but in neither instance is any reference made to

9     any federal basis for the claim.  As such, the federal basis for the claim was not fairly

10    presented to the state courts.

11          **e.     Ground Ten**

12          In his tenth claim, Rundhaug alleges that at sentencing the trial court

13    incorrectly referred to a non-existent "prior conviction" as an aggravating factor.

14    Rundhaug again contends that this claim was raised in his first PCR petition, filed

15    August 18, 2008, and in a second PCR petition, filed on May 24, 2010.  In the first

16    PCR petition, Rundhaug raised a claim similar to what he alleges here.  There, he

17    made the factual argument, without citation to state or federal authority, that "[t]he

18    offenses charged in CR-67313 were not necessarily committed while Petitioner was

19    on probation in CR-9404664A."  *Answer*, Ex. P, p. 6.  Understandably, the trial court

20    and the court of appeals addressed the argument only on factual grounds and without

21    reference or consideration of any federal standard.  *Id*., Ex. Q, p. 1 (trial court order);

22    Ex. A, p. 5 (Court of Appeals Memorandum Decision).

21

1    Similarly, in his second PCR petition, Rundhaug raised the claim purely as a

2  state law claim relying exclusively on the state statute and Arizona cases.  *Answer*,

3  Ex. V, p. 23.    Again, the trial court, in an order later adopted by the Court of

4  Appeals, addressed the claim only on factual grounds and without reference to any

5  federal authority.  *Id*. Ex. W, p. 4 (trial court ruling); Ex. B (Court of Appeals

6  Memorandum Decision).  Thus, a federal basis for this claim was not fairly presented

7  to the state courts.

8    **f.    Ground Eleven**

9    Ground Eleven alleges that the trial court failed to consider mitigating factors

10  in violation of A.R.S. § 13-702 and the Sixth and Fourteenth Amendments of the

11  United States Constitution.  The mitigating factors Rundhaug alleges were ignored

12  are those related to his psychological condition.  Rundhaug raised a similar claim in

13  his first PCR petition, but again made no mention of a federal or constitutional basis

14  for the claim.  *Answer*, Ex. P, pp. 7-8.  In an argument that overlaps the allegations of

15  Ground Ten, Rundhaug also raised the claim on state court grounds in his second

16  PCR petition.  *Id*., Ex. V, p. 23.  Again, the trial court, having no reason to discuss a

17  federal basis for the claim, rejected the claim on purely factual grounds.  *Id*., Ex. W,

18  pp. 5-6.  Thus, this claim was not fairly presented to the state courts.

19    **g.    Ground Eighteen and Twenty to Twenty-Two**

20    Each of Grounds Eighteen and Twenty to Twenty-Two alleges that the trial

21  court improperly denied various motions for transcripts, extensions, subpoenas and

22  interrogatories during the course of Rundhaug's state PCR proceeding following the

22

1    probation revocation and imposition of the 10-year prison sentence.  These claims

2    were raised by Rundhaug in his second PCR petition.  In denying them, the trial court

3    stated that Rundhaug had not shown how any of the claims were valid under Rule

4    32.1, Ariz.R.Crim.P.  *Answer*, Ex. W, P. 1.  The Court of Appeals noted the trial

5    court's finding that many of Rundhaug's claims were not cognizable under Rule 32.1

6    and, finding no need to restate or embellish the order, adopted the trial court's order

7    as its own.  *Id*., Ex. B, pp. 3-4.

8         Under Arizona law, a defendant must comply strictly with Rule 32 by

9    asserting substantive grounds which bring him within the provisions of Rule 32 in

10   order for the court to grant relief.  *State v. Manning*, 143 Ariz. 139, 141, 692 P.2d

11   318, 320 (1984).  As the Arizona courts found, the claims do not fit any of the

12   categories of cognizable claims listed in Rule 32.1.  *See* Rule 32.1(a)-(h),

13   Ariz.R.Crim.P.  Because the state court expressly applied an adequate and

14   independent state procedural bar when the petitioner attempted to raise these claims

15   in state court, federal review of the merits of the claims is barred.  *See Ylst v.*

16   *Nunnemaker*, 501 U.S. 797, 801 (1991).

17                    **h.    Ground Nineteen**

18        This claim alleges that the trial court should have assigned a different and

19   unbiased judge to his case.  The claim was first raised in Rundhaug's second PCR

20   petition.  *Answer*, Ex. V, p. 20.  No mention was made of a federal basis for the claim

21   except for a passing allegation that Rundhaug "was denied a constitutional right."  As

22

23

1  such, Rundhaug failed to exhaust the claim by identifying the federal basis upon

2  which the state court could evaluate the claim.

3  **2. Cause and Prejudice**

4  Respondents contend and Rundhaug does not contradict, that Rundhaug is

5  procedurally barred from now raising these claims in State court. *See* Ariz.R.Crim.P.

6  32.2(a)(3) ("A defendant shall be precluded from relief under [Rule 32] based upon

7  any ground . . . [t]hat has been waived at trial, on appeal, or in any previous collateral

8  proceeding.")  *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).  As such, the

9  merits of the claims need not be addressed unless Rundhaug establishes cause and

10  prejudice or that a fundamental miscarriage of justice has occurred.

11  In his Traverse, Rundhaug argues that "[t]he [trial] court continued to make

12  the bar higher and higher for the defendant because he was 12 days from completing

13  probation or already finished . . . ."  *Traverse*, p. 23.  Nothing in this statement

14  reveals a factor that would constitute cause for his failure to raise the defaulted

15  claims in state court.

16  Rundhaug also asserts that he was denied documents that would have

17  supported his claim that his probation officer lied in the presentence report submitted

18  to the trial court.  This argument appears to be directed at Ground Four of the

19  Petition.  As discussed above, that claim was arguably exhausted and is addressed

20  below.

21

22

1

**B.     Merits**

2       Under the AEDPA, a federal court "shall not" grant habeas relief with respect

3   to "any claim that was adjudicated on the merits in State court proceedings" unless

4   the state decision was (1) contrary to, or an unreasonable application of, clearly

5   established federal law as determined by the United States Supreme Court; or (2)

6   based on an unreasonable determination of the facts in light of the evidence presented

7   in the State court proceeding.  28 U.S.C. § 2254(d).  *See Williams v. Taylor*, 120

8   S.Ct. 1495 (2000).  A state court's decision can be "contrary to" federal law either (1)

9   if it fails to apply the correct controlling authority, or (2) if it applies the controlling

10  authority to a case involving facts "materially indistinguishable" from those in a

11  controlling case, but nonetheless reaches a different result.  *Van Tran v. Lindsey*, 212

12  F.3d 1143, 1150 (9th Cir. 2000).  In determining whether a state court decision is

13  contrary to federal law, the court must examine the last reasoned decision of a state

14  court and the basis of the state court's judgment.  *Packer v. Hill*, 277 F.3d 1092, 1101

15  (9th Cir. 2002).  A state court's decision can be an unreasonable application of federal

16  law either (1) if it correctly identifies the governing legal principle but applies it to a

17  new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails

18  to extend a clearly established legal principle to a new context in a way that is

19  objectively unreasonable.  *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

20              **1.     Ground Four**

21      Ground Four alleges that the trial court committed sentencing errors by failing

22  to adequately conduct an investigation of the presentence report and relied on false

25

1    information contained therein.  In the last reasoned decision on this claim, which the

2    Court of Appeals subsequently adopted, the trial court stated:

3           Finally, Petitioner also refers to a number of supposed factual
     inconsistencies in the addendum to the pre-sentence report.  The Court
4    did not rely on any of these factual allegations in imposing the
     aggravated sentence of ten years.   In fact, when considering the
5    defense's motion to strike the addendum to the pre-sentence report, the
     Court followed the State's recommendation and agreed to several of the
6    changes suggested by the defense. . . .   The Court instead based its
     decision on the fact that Petitioner had a prior felony conviction and
7    committed the offenses in this case while on probation.  The Court of
     Appeals had already affirmed the determination of this Court on those
8    bases.

9    *Answer*, Ex. W, p. 4; Ex. B, p. 4 (Court of Appeals adoption of trial court's ruling).

10          In response to the trial court's determination, Rundhaug asserts in the Petition

11   that it was "impossible for the court to have remembered all the inaccuracies that

12   were pointed out" and that he was prejudiced at sentencing by the trial court's failure

13   to correct the inaccuracies.   *Petition*, p. 16.   As evidence that the trial court

14   improperly relied on allegedly inaccurate information in the PSR, Rundaug points to

15   a statement in the trial court's January 29, 2009, Minute Entry Order denying post-

16   conviction relief.  *Answer*, Ex. Q.  Rundhaug quotes the trial court as stating in that

17   order that:

18          The court finds it did not abuse its discretion . . . based on the contents
            of the presentence report in this case . . . <u>information supplied by the</u>
19          <u>probation officer,</u> and letters written by the defendant.

20   *Id*., pp. 1-2.   As quoted, the order does suggest that the trial court's sentencing

21   decision was based entirely on the contents of the presentence report and the

22   information provided by Rundhaug's probation officer.   However, when the

1   information creatively omitted by the ellipsis is included in the quote, it shows that

2   the quoted paragraph addresses only Rundhaug's request for competency evaluation

3   pursuant to Rule 11, Ariz.R.Crim.P., and not his sentencing in general.  The complete

4   paragraph also reflects that the trial court, again in denying a Rule 11 evaluation,

5   considered Rundhaug's other cases in Pima and Maricopa Counties . . ."  *Id*.  Thus,

6   Rundhaug's offered evidence not only does not address his sentencing, but also

7   shows that the trial court, as it later said it did, considered his criminal history.  This

8   purported evidence offers nothing to contradict the trial court's statement that it

9   based its sentencing decision on the facts that Rundhaug had a prior felony

10   conviction and that he committed the offenses while on probation.

11   ## 2.    Grounds Eight, Twelve and Sixteen

12          In Grounds Eight, Twelve and Sixteen, Rundhaug contends that his 10-year

13   prison sentence was improperly aggravated in violation of *Apprendi v. New Jersey*,

14   530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), which require

15   that any fact, other than the fact of a prior conviction, that increases the penalty for a

16   crime beyond the prescribed statutory maximum, be submitted to a jury and proven

17   beyond a reasonable doubt.  The determination of a defendant's prior criminal history

18   falls into the exemption from the jury requirement under *Apprendi* and *Blakely*.

19   *United States v. Quintana-Quintana*, 383 F.3d 1052, 1053 (9th Cir. 2004).  "[O]nly

20   one aggravating factor is necessary to set the upper term as the maximum sentence."

21   *Butler v. Curry* 528 F.3d 624, 643 (9th Cir. 2008). Under Arizona law, the finding of

22

1  Arizona law permits aggravation based on a prior conviction alone.  *See* A.R.S. § 13-

2  701(D)(11).

3        Here, Rundhaug admitted and does not dispute that he had a prior conviction.

4  That alone rendered him eligible for an upper term sentence.  *Butler*, 528 F.3d at 643.

5  Thus, Rundhaug's claim was correctly decided by the Arizona courts and he is not

6  entitled to habeas relief on Grounds Eight, Twelve and Sixteen.  *Answer*, Ex. A, pp.

7  5-6 (discussing *Blakely* claim).

8                    **3.       Ground Nine**

9        In Ground Nine, Rundhaug alleges that his probation revocation and

10  subsequent imposition of a 10-year prison sentence amounted to double jeopardy and

11  a violation of the Eighth Amendment's prohibition against cruel and unusual

12  punishment.  In the last reasoned discussion of these claims, the trial court found

13  them meritless and explained:

14          Petitioner argues that a sentence of ten years, imposed after he
       served a period of "6 years 353 days" on Intensive Probation Services
15       was so excessive as to constitute "double jeopardy" and a "cruel and
       unusual" sentence.  This claim has no merit.  Petitioner's first five
16       years of IPS were during a period in which he was incarcerated in the
       Department of Corrections [on another conviction].  Thus, he was not,
17       as he describes, on "house arrest" for the better part of seven years.
       Petitioner fails to point to any authority for the proposition that he was
18       entitled to time served for the time he was on IPS much less that his
       sentence within the statutory range was somehow "cruel and unusual"
19       simply because it followed a probation revocation.

20  *Answer*, Ex. W, p. 5.

21        In line with the state courts decision, the United States Supreme Court has

22  made it clear that the imposition of confinement when an offender violates the terms

28

1   of his probation does not implicate double jeopardy.   *See United States v.*

2   *DiFrancesco*, 449 U.S. 117, 137 (1980).

3          Respondents also correctly note that a 10-year sentence for a class 2 felony

4   does not constitute cruel and unusual punishment.  The Eighth Amendment "forbids

5   only extreme sentences that are 'grossly disproportionate' to the crime."  *Ewing v.*

6   *California*, 538 U.S. 11, 23 (2003).  In a noncapital case, successful proportionality

7   challenges are "exceedingly rare."  *Id*. at 20-21 (sentence of twenty-five years to life

8   for felony theft of golf clubs under California's Three Strikes law, with prior

9   felonies, did not violate federal prohibition on cruel and unusual punishment).

10  Rundhaug's sentence does not approach the levels found to be "grossly

11  disproportionate."  *See, e.g., Hutto v. Davis*, 454 U.S. 370 (1982) (sentence of 40

12  years for possession of 9 ounces of marijuana found constitutional); *Harmelin v.*

13  *Michigan*, 501 U.S. 957 (1991) (mandatory life sentence for first offense of

14  possession of 672 grams of cocaine found constitutional).  As such Ground Nine

15  does not warrant habeas relief.

16  **III.    RECOMMENDATION**

17          Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the

18  District Court, after its independent review, **deny** Rundhaug's Petition for Writ of

19  Habeas Corpus (Doc. 1).

20          This Recommendation is not an order that is immediately appealable to the

21  Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1),

22

1  Federal Rules of Appellate Procedure, should not be filed until entry of the District

2  Court's judgment.

3          However, the parties shall have fourteen (14) days from the date of service of

4  a copy of this recommendation within which to file specific written objections with

5  the District Court.  *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the

6  Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen (14) days

7  within which to file a response to the objections.  If any objections are filed, this

8  action should be designated case number: **CV 11-770-TUC-FRZ**.  Failure to timely

9  file objections to any factual or legal determination of the Magistrate Judge may be

10  considered a waiver of a party's right to *de novo* consideration of the issues.  *See*

11  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003)(*en banc*).

12          Dated this 18th day of June, 2013.

13

14

15                                    *Jacqueline M. Rateau*

16                                    Jacqueline M. Rateau
                                     United States Magistrate Judge

17

18

19

20

21

22